[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13100
Non-Argument Calendar
_____

D.C. Docket No. 1:08-cv-00595-CAP


ELLERY STEED,

Plaintiff-Counter Defendant-Appellant,


versus


EVERHOME MORTGAGE COMPANY,
MERSCORP INC.,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.,
CITIMORTGAGE INC.,
COUNTRYWIDE FINANCIAL CORPORATION,
GMAC-RFC HOLDING COMPANY, LLC,
MORSERV INC.,
WELLS FARGO and CO.,
DOES 1-11, INCLUSIVE,

Defendants-Appellees,

FANNIE MAE,

Defendant-Counter Claimant-Appellee,

HSBC FINANCE CORPORATION, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 11, 2012)

Before TJOFLAT, CARNES and BLACK, Circuit Judges.

PER CURIAM:

On July 29, 2003, Ellery Steed, an African-American, obtained a mortgage loan to purchase a home in Atlanta, Georgia. In addition to executing a promissory note, he executed a security deed ("mortgage") to Mortgage Electronic Registration Systems, Inc. ("MERS"). On October 1, 2005, EverHome Mortgage Company ("EverHome") became the servicer for the mortgage. EverHome thereafter purchased a hazzard insurance policy to protect the mortgage loan balance as permitted under the terms of the mortgage.[1] This increased Steed's monthly payments by $220 and Steed didn't like it, so he stopped making his mortgage payments. When EverHome threatened foreclosure, Steed made the loan current. Steed eventually failed to make the mortgage payments, however, and

_____

[1] EverHome purchased the hazard insurance because Steed failed to provide it.

2

EverHome commenced foreclosure proceedings. The Superior Court of Fulton County entered a judgment of foreclosure, and, on February 5, 2008, Steed's home was foreclosed.

Steed brought suit against EverHome on four occasions, two before and two after the foreclosure. The first suit ("*Steed I*") was filed in the Fulton County Superior Court, *Steed v. Everhome Mortgage Co.* On February 22, 2006. Steed's complaint sought, among other things, relief from the various fees and assessments EverHome had imposed. He voluntarily dismissed the suit on November 27, 2006, prior to trial. The second suit ("*Steed II*") was filed against EverHome in the U.S. District Court for the Northern District of Georgia, *Steed v. Everhome Mortgage Co.*, on December 19, 2006. His complaint sought relief under the Fair Housing Act, 42 U.S.C. § 3605 et seq., the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., the Georgia Fair Housing Act, O.C.G.A. § 8-3-200 et seq., the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq., and Georgia tort law, fraud and negligence. In response, EverHome, citing Steed's mortgage loan defaults, counterclaimed for the full amount due on the promissory note. On May 14, 2008, the district court granted EverHome summary judgement on Steed's claims, and EverHome dismissed its counterclaim (its foreclosure

proceedings having concluded with the February 5, 2008 foreclosure).[2]  Steed

appealed the summary judgment, and we affirmed.  *Steed v. EverHome Mortgage*

*Company*, 308 F. App'x 364 (11th Cir. 2009).  The third lawsuit ("*Steed III*") was

filed in the Fulton County Superior Court, *Steed v. Everhome Mortgage Co*., on

January 25, 2008, after Steed  received from EverHome in December 2007 notice

of the impending foreclosure sale.  In *Steed III*, in addition to EverHome, Steed

sued most of the parties now before this court as appellees.  Before service of

process was effected on any of these parties, EverHome removed the case to the

District Court based on diversity of citizenship.  Shortly after the removal, the

District Court denied Steed's application for an order enjoining the foreclosure

proceedings.  Steed voluntarily dismissed Steed III on March 4, 2008.

The fourth suit ("*Steed IV*"), *Steed v. Everhome Mortgage Co*., is the case

presently before us on appeal.  Steed filed it on February 25, 2008, after

EverHome had executed a foreclosure sale on his residence on February 5, 2008,

in an effort to vacate the foreclosure sale.  Steed's complaint, as amended, mirrors

the complaint in *Steed III* and asserts essentially the same claims Steed asserted in

---

[2]  Before granting summary judgment, the district court denied Steed's application for an injunctive order restraining the foreclosure proceedings because Steed admitted to the court that he owed EverHome for the past due mortgage payments and was in default because he lacked the financial resources to make the payments.

4

a suit in the District of Delaware, *Trevino v. Merscorp, Inc.*, et al., Case No. 1:07-CV-658 (D. Del. Sep. 20, 2007). In addition to EverHome, the complaint seeks relief against Merscorp, Inc., MERS, Citimortgage, Inc., Countrywide Financial Corporation, GMAC-RFC Holding Company, LLC, Morserv, Inc., Wells Fargo and Co., the controlling shareholders of MERS and Merscorp, Inc., HSBC Finance Corporation, Fannie Mae and various unnamed persons or entities. As amended, the complaint included a variety of federal and state law claims, among them claims for breach of contract, false representation, breach of the duty of good faith and fair dealing, unfair trade practices, negligent commencement of foreclosure proceedings, fraud, fraudulent conspiracy, denial of free access to the courts, in violation of the United States and Georgia constitutions, racketeering, in violation of federal and state "RICO" statutes, and race discrimination, in violation of the Federal Fair Housing Act, 42 U.S.C. § 3605, and the Georgia Fair Housing Act, O.C.G.A. § 8-3-204.

The district court found no merit in any of Steed's claims and gave the defendants judgment. It disposed of Steed's claims in the orders Steed challenges in this appeal: the orders entered on September 30, 2009 (dismissing claims against EverHome), on January 29, 2010 (dismissing claims against MERS and Merscorp, Inc. and their shareholders, EverHome, GMAC-FRC Holding

5

Company, LLC, HSBC Finance Corporation, and Fannie Mae), on May 18, 2011 (granting EverHome, MERS and Merscorp, Inc. summary judgment), and on June 8, 2011 (denying Steed's motion for reconsideration of the May 18, 2011 order).

In his opening brief, Steed appears to be challenging the district court's judgments in favor of EverHome, MERS, Merscorp, Inc., and the MERS and Merscorp, Inc. shareholders. He argues that the court erred in dismissing his state law claims for wrongful foreclosure, negligent foreclosure, fraud, fraudulent conspiracy, and his claims under the federal and state RICO statutes. He also argues that the court erred in granting EverHome summary judgment on his claims under the federal and state fair housing acts.[3] We find no merit in any of Steed's arguments. And with the exception of Steed's claims under the fair housing acts, none warrant discussion.

The Federal Fair Housing Act ("FHA") provides, in pertinent part:

(a) In general

It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any

---

[3] In addition to the above, Steed argues that the district court abused its discretion in refusing to grant him declaratory relief, a statement that the foreclosure sale of his residence was invalid, erred in denying his motion for a default judgment against EverHome, and erred in denying his motion for summary judgment against MERS and Merscorp, Inc. for breach of contract and their duty of good faith and fair dealing. The challenges are patently meritless and require no comment.

person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

(b) "Residential real estate-related transaction" defined

As used in this section, the term "residential real estate-related transaction" means any of the following:

(1) The making or purchasing of loans or providing other financial assistance--

(A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or

(B) secured by residential real estate.

(2) The selling, brokering, or appraising of residential real property.

42 U.S.C. § 3605.

The Georgia Fair Housing Act provides, in pertinent part:

(a) As used in this Code section, the term "residential real estate related transaction" means any of the following:

(1) The making or purchasing of loans or providing other financial assistance:

(A) For purchasing, constructing, improving, repairing, or maintaining a dwelling; or

(B) Secured by residential real estate; or

(2) The selling, brokering, or appraising of residential real property.

(b) It shall be unlawful for any person or other entity whose business includes engaging in residential real estate related transactions to discriminate against any person in making available such a transaction or in the terms or conditions of such a transaction because of race, color, religion, sex, handicap, familial status, or national origin.

O.C.G.A. § 8-3-204.  As the district court correctly noted, the Georgia courts

consider federal court interpretations of the FHA as persuasive and rely on those

interpretations in construing the Georgia Act.

> Steed's fair housing act claims of race discrimination were based on
>
> defendants' (1) fraudulent charging and overcharging of
> late fees, (2) inflated escrow charges, (3) inexplicable
> and unaccounted-for mortgage payment(s) dispersed to
> EverHome from the bankruptcy trustee, (4) grossly
> excessive, unsubstantiated and fraudulent charges of
> attorneys fees and foreclosure fees,
> discriminatory/predatory servicing and charging of
> mortgage and hazard insurance premiums, intentional and
> fraudulent commencement of foreclosure proceedings and
> various other unsubstantiated, unreasonable and inflated
> charges denoted as corporate advances.

Order, May 18, 2011 at 15.  Since Steed lacked direct evidence of discrimination,

and thus based his claim of discrimination on circumstantial evidence, the district

court applied the familiar burden-shifting framework of *McDonnell Douglas v.*

*Corp. V. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), and *Texas*

*Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.

Ed.2d 207 (1981).  Steed's claims of discrimination bundled together amount to

what has been referred to as "reverse redlining."  As the district court observed, in

*Steed II*, after noting that no circuit court had addressed the elements of an FHA

claim of "reverse discrimination," this court took the approach taken by the district

8

court in *Hargraves v. Capital City Mortgage Corp.*, 140

F. Supp.2d 7 (D.D.C.2000). *Hargraves,* we said,

> defined "reverse redlining" as "the practice of extending credit on unfair terms" because of the plaintiff's race and geographic area. *Id*. at 20 (quotations omitted). Using this definition, the Hargraves court required the plaintiff to prove reverse redlining by "show[ing] that the defendants' lending practices and loan terms were 'unfair' and 'predatory,' and that the defendants either intentionally targeted on the basis of race, or that there is a disparate impact on the basis of race." *Id*. (emphasis added). It also held that the plaintiff need not show that the defendant made loans on preferable terms to non-African–Americans. *Id*. It further explained that predatory lending practices include exorbitant interest rates, equity stripping, acquiring property through default, repeated foreclosures, and loan servicing procedures that involve excessive fees. *Id*. at 20–21. Finally, the court held that whether the practices alleged occurred, and whether the practices were unfair and predatory, is a jury question. *Id*. at 21.

308 Fed. App'x at 368-69.

The district court assumed, for sake of argument, that the practices Steed complained of (as outlined above) actually occurred and that they were unfair or predatory for the purposes of federal and state fair housing acts, and then concluded that Steed's claims failed for lack of evidence that the practices were based on racial animus. What Steed presented were the affidavits of three other African-Americans (in addition to his own testimony) who said that EverHome engaged in practices similar to those Steed complained of. The court held that this

9

was not enough, standing alone to prove "a pattern of servicing practices that target African Americans . . . or have a disparate impact on African Americans."

Order, May 18, 2011 at 16. The court explained its holding thusly:

> In the current case, the record . . reveals only that four African Americans living in communities predominantly composed of African Americans believe that EverHome has treated them unfairly by adding inappropriate fees, refusing requests for information, and ultimately improperly foreclosing. Even assuming these allegations to be true, however, the record does not allow the plaintiff's fair housing act claims to survive summary judgment. The absolute number (four) reveals nothing to the court about the proportion of loans serviced by EverHome that belong to African Americans (as opposed to those belonging to some other race) nor whether EverHome applies the allegedly predatory or unfair practices more often to African Americans than to people of other races. By failing to present any such evidence, the plaintiff fails to carry his burden of showing a prima facie case of discrimination based on race.

*Id*. at 17-18. We find no fault in the district court's holding, and therefore its rejection of Steed's fair housing act claims.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.